CHOOSE LIFE CAMPAIGN '90', an Unincorporated Association; ANN DANKWORTH; JANNA GARDNER; PAT ROBERTS; MARGARET BUSHMAN; FRANCES HYNE; SHARRON ANGLE; PAT GLENN; JUDY DALLUGE; MARY ANNE POLISH; TERRY JENSEN; DIANA HILL; BETTY REYNOLDS; EVA TRIMBLE; JANINE HANSEN; and JANINE GRIFFIN, as Representatives of said Association and as Individuals, Residents, Citizens, Taxpayers, and Electors of the State of Nevada, Appellants, *v.* FRANKIE SUE DEL PAPA, Secretary of State of Nevada; and CAMPAIGN FOR CHOICE, a Cooperative Association, Respondents.

No. 21325

November 28, 1990                    801 P.2d 1384

*Thorndal, Backus, Maupin & Armstrong* and *Stephen C. Balkenbush,* Reno; *Edwards, Hunt, Hale & Hansen,* Las Vegas; *Gubler & Peters,* Las Vegas, for Appellants.

*Brian McKay,* Attorney General and *Jonathan Andrews,* Deputy Attorney General, Carson City, for Respondent Del Papa.

*Laura Wightman FitzSimmons,* Carson City, for Respondent Choice.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court dismissing appellant's petition for injunctive and other extraordinary relief.[1]

On September 12, 1990, following the oral argument in this appeal, we directed the clerk of this court forthwith to issue a writ of mandamus compelling the secretary of state to modify the language of the arguments for and against passage of question 7, the referendum for approval or disapproval of NRS 442.250, which the secretary of state prepared for inclusion in the sample ballots. Specifically, we directed the secretary of state to delete the last complete sentence of the argument for passage of the referendum, and the last complete sentence of the argument against passage of the referendum. We further directed that such language not appear in any sample ballot distributed to any voter in the State of Nevada. We indicated that a formal opinion setting forth the grounds for our decision would be issued at a later date.

Through the efforts of a cooperative association named Campaign for Choice ("Choice"), a referendum was placed on the November general election ballot. It is uncontested that the referendum was properly placed on the ballot. *See* Nev. Const. art. 19, § 1.

Pursuant to the referendum, the people of the state were asked to approve NRS 442.250, a state statute regulating abortion adopted by the legislature in 1973 in direct response to the United States Supreme Court's decision in Roe v. Wade, 410 U.S. 113 (1973). If NRS 442.250 were approved, it would become "the law of the state and [could] not be amended, annulled, repealed, set aside, suspended or in any way made inoperative except by the direct vote of the people." Nev. Const. art. 19, § 1(3). If the statute were disapproved, it would become void. *Id.*[2]

The secretary of state, after consulting with the attorney general, drafted arguments for and against the referendum. *See* NRS 293.250(5).[3] The arguments were released on June 12, 1990.

---

[1]In the district court, appellants did not specify the relief that they sought as extraordinary. However, they sought to compel the secretary of state to perform an act or to refrain from performing an act. Thus, the relief they sought was in the nature of injunction, mandamus, and prohibition.

[2]At the general election on November 6, 1990, the people approved NRS 442.250.

[3]NRS 293.250(5) provides:

The condensations and explanations for constitutional amendments and statewide measures proposed by initiative or referendum must be

On July 12, 1990, an unincorporated association entitled Choose Life Campaign '90' and seventeen individual taxpayers (hereinafter collectively referred to as "Life") filed in the district court a complaint for injunctive and other relief. The complaint named only the secretary of state as a defendant. Life alleged that the arguments in favor of and against passage of the referendum drafted by the secretary of state were false and misleading, and did not "correctly reflect the arguments of [Life] or any other person opposed to the referendum . . . ."

On July 19, 1990, Choice moved the district court for leave to intervene in the action as a defendant. Choice also moved to dismiss Life's complaint.

On July 20, 1990, the district court held a hearing on the pending motions. At the hearing, the district court orally granted Choice's motion to intervene. The district court then indicated its intention to grant Choice's motion to dismiss. The district court concluded that the only issue properly before it was whether the statutory procedure for placing arguments for and against a referendum on the sample ballot violated Life's right to due process. The district court determined there had been no viola- tion of Life's due process rights and that NRS 293.250(5) is not unconstitutional on its face.

On July 23, 1990, the district court dismissed Life's complaint for the reasons expressed orally at the hearing of July 20, 1990. This timely appeal followed.

In this appeal, Life did not challenge the referendum on November's ballot. Instead, Life challenged the secretary of state's proposed arguments for and against passage of the referendum which, absent judicial intervention, would have been printed on the sample ballots mailed to every registered voter, and would have been published in the newspapers of every county. Specifically, Life contended that the arguments for and against passage

---

prepared by the secretary of state, upon consultation with the attorney general. They must be in easily understood language and of reasonable length, and whenever feasible must be completed by April 1 of the year in which the general election is to be held.

NRS 293.250(4) provides that the arguments drafted by the secretary of state "must be included on all sample ballots." No other provisions with respect to the preparation or content of the arguments for and against a referendum are provided. Nevertheless, implicit in the statute is the requirement that the secretary of state make a good faith effort to present the arguments fairly.

of the referendum were false and misleading, and did not represent the views of the opponents to the referendum.[4]

The last line of the proposed argument against the referendum stated: "The legislature and not the people of Nevada should decide how abortion is to be regulated." The corresponding last line of the argument in favor of passage stated: "The people of Nevada and not the legislature should decide how abortion is to be regulated."

These arguments were misleading because it was not the position of Life or any opponent of the referendum that the people should not be allowed to decide how abortion will be regulated in Nevada. The arguments were particularly unfair because they appealed to the natural tendency in people to want to be in control, and misrepresented the role of the legislature in our system of government.

Nevertheless, respondents asserted that the language was fair and balanced. Counsel stated that Choice commenced this referendum for the sole purpose of taking from the legislature and reserving to the people the power to regulate the right to an abortion. Thus, respondents argued that the central issue in this matter was who should decide.

By definition, every referendum seeks to take from the legislature and reserve to the people the power to change an existing law. *See* Nev. Const. art. 19, § 1. Thus, the purpose of every referendum is to decide whether an existing law should be placed beyond legislative control. It does not follow, however, that the issue in every referendum is whether the legislature or the people should decide how a particular matter will be regulated.

Had the present law not favored the position of Choice, and had Life commenced a referendum to place that law beyond legislative control, Choice would most certainly have considered an argument posing the issue as a question of who should decide as false, misleading and unfair to its position. Although Choice

---

[4]In the district court, Life challenged as misleading every word of the argument against passage of the referendum. In this court, Life's arguments focused on only two sentences in the argument against passage, the first and the last. At oral argument in this matter, counsel for Life stated that Life would be satisfied if this court required only the last lines of the arguments for and against passage of the referendum altered. Although the argument against passage of the referendum certainly could have been better drafted to more accurately and fairly express the views of the opponents to the referendum, we do not consider the text, other than the last lines of the arguments for and against the referendum, to be so misleading as to warrant judicial intervention. Thus, we have confined our discussion in this opinion to the final lines of the arguments for and against the referendum.

would most certainly favor regulation by the people rather than by the legislature, Choice would be opposed to the referendum.

The arguments drafted by the secretary of state, posing the issue in terms of who should decide, rather than in terms of the advisability of placing the present law of the state beyond legislative control, did not fairly represent the arguments of the opponents to the referendum. Thus, under the circumstances of this case, it was inappropriate for the secretary of state to include these arguments in the proposed language of the sample ballots.

A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station, NRS 34.160, or to control an arbitrary or capricious exercise of discretion. *See* Hickey v. District Court, 105 Nev. 494, 782 P.2d 1336 (1989); Barnes v. District Court, 103 Nev. 679, 748 P.2d 483 (1987); Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981); Russell v. Thompson, 96 Nev. 830, 619 P.2d 537 (1980); Henderson v. Henderson Auto, 77 Nev. 118, 359 P.2d 743 (1961). A writ of mandamus will not issue, however, if the petitioner has a plain, speedy and adequate remedy in the ordinary course of the law. *See* NRS 34.170.

In this case, due to the impending election, appellants had no effective remedy in the ordinary course of the law. Further, this matter involved an issue of great importance that has engendered controversy and has split the people of this state. It was necessary, therefore, that the election on this issue proceed in a fair and representative manner. Finally, as concluded above, the arguments drafted by the secretary of state did not fairly represent the issues to be decided.

Accordingly, under the peculiar circumstances of this case, on September 12, 1990, this court issued a writ of mandamus compelling the secretary of state to correct the injustice that might have resulted from dissemination of the proposed arguments in favor of and against question 7 on the November ballot.

We have reviewed appellants' remaining contentions, and we conclude that they lack merit. In light of this court's order of September 12, 1990, we dismiss this appeal.