NEVADA JUDGES ASSOCIATION; THE HONORABLE D. LANNY WAITE, JUSTICE OF THE PEACE, INDIVIDUALLY AND AS PRESIDENT OF THE NEVADA JUDGES ASSOCIATION; AND THE HONORABLE CHARLES M. McGEE, DISTRICT JUDGE, INDIVIDUALLY AND AS PRESIDENT OF THE NEVADA DISTRICT JUDGES ASSOCIATION, PETITIONERS, *v.* CHERYL LAU, AS SECRETARY OF STATE OF NEVADA, RESPONDENT, AND NEVADANS FOR TERM LIMITS AND RESPONSIBLE CAMPAIGN FUNDING, REAL PARTY IN INTEREST.

No. 26177

January 31, 1996                                     910 P.2d 898

[Rehearing April 30, 1996]

*Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F. Polsenberg,* for Petitioners.

*Frankie Sue Del Papa,* Attorney General, and *Kateri Cavin,* Deputy Attorney General, Carson City, for Respondent.

*Maddox & Walker,* Carson City, for Real Party in Interest.

## OPINION

By the Court, ROSE, J.:

On September 29, 1994, the Nevada Judges Association, D. Lanny Waite, Justice of the Peace, individually and as President of the Nevada Judges Association, and Charles M. McGee, District Judge, individually and as President of the Nevada District Judges Association, filed this original petition for a writ of mandamus requesting that a term limits initiative, which was to appear as Question Number 9 in the November 1994 general election, be removed from the ballot. On October 4, 1994, this court denied petitioners' request to intervene before the election and ordered that the respondent, Secretary of State Cheryl A. Lau, and the real party in interest, Nevadans for Term Limits and Responsible Campaign Funding, file answers. This court subsequently received timely answers from the respondent and from the real party in interest.

In the November 1994 election, the voters approved Question Number 9. The measure is not effective immediately, but must be passed by the electorate a second time before it becomes effective, pursuant to Article 19, Section 2(4) of the Nevada Constitution.

Petitioners contend that Question Number 9 (the initiative) is invalid because it violates the equal protection and due process

guarantees of the Nevada and United States constitutions and because its impact on judicial offices was inadequately explained. The part of the initiative with which petitioners are concerned would amend Article 6, Section 11 of the Nevada Constitution by adding the following language:

> No person may be elected a justice of the supreme court, judge of any other court, or justice of the peace more than twice for the same court, or more than once if he [sic] has previously served upon that court by election or appointment.

### The constitutionality of the initiative

Petitioners contend that the initiative violates the equal protection and due process guarantees of the Nevada and United States constitutions.

The test for determining the constitutionality of state restrictions on elections is set forth in Anderson v. Celebrezze, 460 U.S. 780 (1983). In setting out the test, the Supreme Court first noted that "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Id.* at 788. The Court went on to state:

> Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. The results of this evaluation will not be automatic; as we have recognized, there is "no substitute for the hard judgments that must be made."

*Id.* at 789-90 (citations omitted) (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)). Thus, under *Anderson,* this court must consider: (1) the nature of the asserted injury to the protected

rights; (2) the interests put forward by the state as justification for that injury; and (3) the necessity for imposing the burden on the petitioners' rights rather than some less restrictive alternative.

The initiative would infringe upon the citizens' right to vote for the candidate of their choice and the judges' right to hold office. Voters' rights and candidates' rights cannot be easily separated: laws that affect candidates always have a correlative effect on the voters. Bullock v. Carter, 405 U.S. 134, 143 (1972). In the instant case, if the initiative is passed, it would thereafter permanently exclude incumbent judges from serving more than two terms in the same office and preclude voters from returning an incumbent who has served two terms to the same office.

There is no doubt that candidate eligibility requirements implicate basic constitutional rights. *Anderson,* 460 U.S. at 786.[1] Ballot access restrictions burden

> "two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms."

*Id.* at 787 (quoting Williams v. Rhodes, 393 U.S. 23, 30-31 (1968)).

> The exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens.

*Id.* at 787-88. This court has stated:

> The right to hold public office is one of the valuable rights of citizenship. The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office.

Gilbert v. Breithaupt, 60 Nev. 162, 165-66, 104 P.2d 183, 185 (1940). We recently reaffirmed this proposition. *See* SNEA v. Lau, 110 Nev. 715, 720, 877 P.2d 531, 535 (1994).

---

[1]The exclusion of candidates burdens voters' freedom to vote for the candidate of their choice. Anderson v. Celebrezze, 460 U.S. 780, 787-88. Freedom of association is a First Amendment principle. Although petitioners do not appear to be challenging the initiative directly on First Amendment grounds, we assume that their due process claim encompasses a First Amendment claim.

However, the United States Supreme Court has stated that a barrier to candidate access to the primary ballot does not, of itself, compel strict scrutiny under the equal protection clause. *Bullock,* 405 U.S. at 143. "Although these rights of voters are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." Anderson v. Celebrezze, 460 U.S. 780, 788 (1983). The right to vote to fill every public office is not constitutionally protected; when an election is held, citizens have a constitutionally protected right to participate in the election on an equal basis with other citizens in the jurisdiction. Rodriguez v. Popular Democratic Party, 457 U.S. 1, 9-10 (1982).

Since the right to run for office is not deemed a fundamental right and term limits do not hinder the equal participation of all citizens to vote in an election, the nature of the asserted injury caused by the initiative does not appear to be unconstitutionally severe.

As for the state interests put forward as justifying term limits, the argument for passage of the initiative placed on the ballot reads as follows:

> Proponents argue that passage will stop career politicians since no one will be able to hold one office for several terms. Passage may lessen the power of lobbyists and special interest groups since state officials and local governing body members will only be in office for a limited amount of time. State officials and local governing body members would have the opportunity to focus on the issues instead of reelection. A greater number of Nevadans would be allowed to serve as state officials and as members of local governing bodies.

It is clear that the reasons cited above for term limits primarily apply to legislative and executive bodies, which are besieged by lobbyists and special interest groups. The term "career politicians" is used as a pejorative. Cases that have upheld term limits for legislators cite as one of the advantages of term limits that "career politicians" will be eliminated, allowing a return to the citizen representatives envisioned by the founders of this nation. Legislature of State of Cal. v. Eu, 816 P.2d 1309, 1325 (Cal. 1991). This reasoning is not applicable to the federal judiciary in that the founders did not envision judges as politicians or as citizen representatives. On the contrary, the founders believed in giving judges lifetime appointments to insulate them from politics. *See* U.S. Const. art. III, § 1. The almost universal tradition

has been that judges are trained professionals who make a career in the judiciary. In fact, in many countries judges select or are selected for a career track in the judiciary immediately after the completion of their legal training. Even now, no other states in this country have extended term limits to judges, indicating that others see benefits in maintaining a career judiciary.

We recognize that petitioners' concerns about the effects of term limits on the judiciary are legitimate and compelling. The effective and proper administration of justice requires that judges be specially qualified in the law. District judges and supreme court justices must be professionally trained and licensed to practice law. Except for the first term of some appointed judges, the terms of all district judges in this state expire at the same time every six years. The initiative, if adopted, would result in the departure of experienced jurists all at once from the district court bench, to be replaced by novice judges. We fear that this would seriously disrupt the orderly administration of the state's courts. The impact of the initiative may be particularly onerous in the rural areas of Nevada, where population numbers are low and fewer citizens trained in law are available to serve as district judges.

Nevertheless, it is not the function of this court to judge the wisdom of term limits on the judiciary, but rather to determine whether such limits pass constitutional muster. Under the *Anderson* test, the state interests put forward to justify the injury to voters' and candidates' protected rights appear constitutional. The state can claim an interest in broadening the composition of the judiciary, encouraging new candidates to seek judgeships, eliminating unfair incumbent advantages, and discouraging entrenched power bases in the judiciary. Despite the adverse effect that the limits would have on the orderly and efficient administration of justice and the increased financial burden in the training of the judiciary, we conclude that the voters of this state are empowered to impose such limitations.

As for less restrictive alternatives to the lifetime restriction on re-election to the same office, it could be argued that a temporary ban on re-election would equally serve the state's interests. However, we conclude that the lifetime ban may be considered necessary to address concerns that the initiative is aimed at. If the exclusion were not permanent, the composition of the judiciary might not change as drastically as proponents of the initiative intend, since some incumbents would return to previous positions once they again became eligible.

We note that other jurisdictions have upheld the constitutionality of term limits for elected officials—although not specifically for judges—and much of the reasoning in those cases is persuasive here. Miyazawa v. City of Cincinnati, 825 F. Supp. 816, 819-22 (S.D. Ohio 1993); U.S. Term Limits, Inc. v. Hill, 872 S.W.2d 349, 359-60 (Ark. 1994), *aff'd on other grounds,* ....... U.S. ......., 115 S. Ct. 1942 (1995); Legislature of State of California v. Eu, 816 P.2d 1309 (Cal. 1991), *cert. denied,* 503 U.S. 919 (1992); Cowdrey v. Redondo Beach, 19 Cal. Rptr. 2d 179, 188-89 (Ct. App. 1993); Roth v. Cuevas, 603 N.Y.S.2d 962 (N.Y. Sup. Ct. 1993).

We also note that the term limits provision is non-discriminatory. As discussed below, it is true that the length of different judges' terms may vary from one another, but that is caused by the interaction between the amendment and existing constitutional provisions, not by the instant initiative. Petitioners also argue that the initiative affects judges more stringently than it does other public officers in that the provisions with regard to other officers refer to a number of years of allowed service, not just the number of terms. This discrepancy in the treatment of different public officers does not amount to a violation of equal protection guarantees under either the Nevada or federal constitutions, although it is a relevant consideration, as discussed below.

It is not the function of this court to agree or disagree with the policy behind the initiative. It is our function to determine whether the proposed amendment's impact on protected rights is so extreme and unjustified that it violates constitutional strictures. We conclude that its impact does not rise to the level of unconstitutionality.

*The misleading presentation of the initiative on the ballot*

Petitioners are also concerned that the initiative lumps judges together with all other public officers without clearly elucidating the different effects it has on judges. The question on the ballot states: "Shall the Nevada Constitution be amended to establish term limits for state and local public officers?" The explanation states in part:

> This amendment would limit members of the state Assembly to serving twelve (12) years or six (6) terms in office. Members of the state Senate would be limited to serving twelve (12) years or three (3) terms in office. Justices of the Supreme Court, justices of the peace, and all other judges would be limited to two (2) terms. The Secretary of State, State Treasurer, State Controller, and the Attorney General

would be limited to eight (8) years or two (2) terms. Other state officials and local governing body members would be limited to twelve (12) years.

Only judicial positions receive no explanation in terms of total years of service. Petitioners argue that the initiative would limit some judges to two fractions of a single term, which would limit their total service to less than six years, and that the explanation failed adequately to explain this potential effect.

Petitioners are correct. The initiative's wording regarding judicial term limits does not make it clear that a judge may be limited to serving less than three years under certain circumstances. The explanation does not indicate that after appointment to the bench, to continue in office a district judge must run for office at the next general election for a term that may be as short as two years, not the six years of a normal term. *See* Nev. Const. art. 6, § 20, subsection 2. In such cases, under the proposed amendment's term limits, some judges could not seek re-election after having served a period of less than three years. The explanation to the initiative does not explain these ramifications. Although it does state in regard to all affected positions that appointment for any amount of time would be considered one term, it does not indicate that an appointed judge's ensuing elected term might be as short as two years.

NRS 293.250(5) requires initiative explanations to be "in easily understood language and of reasonable length." We recognize that it might be impossible for the Secretary of State to explain all the conceivable implications of every initiative placed on a ballot. However, most voters would assume that judicial terms under the proposed amendment would be the usual six years, and requiring the explanation on the ballot to make clear that under certain circumstances the terms would be a much shorter period of time is clearly appropriate under NRS 293.250(5).

The failure to explain these ramifications of the proposed amendment, combined with the initiative's failure to in any way distinguish the judiciary from other branches of government, renders the initiative and its explanation potentially misleading. As noted above, term limits have been exclusively applied to the executive and legislative branches, and no such limitations have ever been imposed on the judiciary. We have the real concern that a casual reader will not understand that the proposed limits apply to judges and not just to officers elected to the political branches of government. Some voters who want term limits for "politicians" may actually prefer a career judiciary.

In Stumpf v. Lau, 108 Nev. 826, 832-33, 839 P.2d 120, 123-24 (1992), this court determined that an initiative's failure to inform voters as to its nature and effect was sufficient ground to remove the initiative from the ballot. However, this court may intervene and simply modify the wording of a ballot question if such correction will eliminate the infirmity. Choose Life Campaign '90' v. Del Papa, 106 Nev. 802, 801 P.2d 1384 (1990). In *Choose Life*, this court held that the arguments drafted by the Secretary of State for and against a ballot referendum did not fairly represent the argument made by opponents to the referendum. We therefore directed the Secretary of State to modify the arguments by deleting specific misleading portions.

In this case, all public officials—whether legislative, executive, or judicial—are lumped into one initiative. The impact on these elected officials and the branches in which they serve is different. Voters, while favoring term limits in general, may fail to distinguish between the varying impacts on different branches of government. We conclude that the form of the initiative and the wording of the explanation could have been unnecessarily misleading. Therefore, we direct that the next time the initiative appears on the ballot, it be severed and presented in the form of two questions, enabling voters to vote yes or no in regard to term limits for non-judicial public officers and yes or no in regard to term limits for judges and justices. Each question shall have its own respective explanation and arguments, and the explanation in regard to term limits for judges shall make clear that in the case of appointed judges, proposed term limits may preclude an incumbent from seeking re-election after serving less than three years on the bench. This will ensure that the voters are well informed in regard to the specific impact that the proposed term limits will have on the separate branches of government and the elected officers serving in each. The two questions will present the same basic term limit proposals that were presented in 1994, and the voters will have the opportunity to enact them. However, the separate questions should focus the voters' attention on the fact that judicial officers are included in the proposed term limits, and a detailed explanation of the impact on the judiciary will be contained.

Accordingly, we direct the Secretary of State to place the proposed amendment of Section 11 of Article 6 of the Nevada Constitution as a separate question the next time it appears on the ballot. The following explanation shall be part of that ballot question:

Justices of the supreme court, district court judges, justices of the peace, and all other judges would be limited to two full terms, to one full term and a fraction of a term, or to two fractions of one term. Limits to service by a judge would range from twelve years to less than three years. A limit of three years or less would occur if a judge is appointed to fill a judicial vacancy and then is re-elected to the final two years of the term, as is required to keep the position: this would constitute two terms under the terms of the amendment.

## CONCLUSION

Petitioners' request that the initiative be removed from the ballot is denied. However, we hereby order the severance of the initiative into two separate questions with more detailed explanation at the next relevant election.[2,3]

STEFFEN, C. J., and YOUNG and SPRINGER, JJ., concur.

SHEARING, J., concurring in part and dissenting in part:

I agree that the ballot initiative is constitutional as it applies to judges. I also believe that the ballot initiative's explanation regarding its effect on judges is accurate and meets the statutory standard of being "in easily understood language and of reasonable length." NRS 293.250(5). While the explanation may not set forth all of the initiative's implications for judges in light of other constitutional provisions, that is not required under the law. If that were the requirement, no ballot initiatives would be deemed acceptable and still comply with the requirement of being "of reasonable length."

I submit that the question as presented to the voters in the 1994 election should either be upheld as satisfactory or struck down as defective. If upheld as satisfactory, it should be on the ballot in

---

[2]We do not conclude that the 1994 ballot question and explanation were so unclear or misleading as to make them constitutionally infirm. But, under our authority to review the fairness and accuracy of ballot propositions and to make necessary revisions to fully inform the voter in a balanced presentation, we give the directives contained in this opinion to the Secretary of State. If either proposal passes in the 1996 general election, the Constitution will be effectively amended as to the proposal or proposals receiving a majority vote.

[3]Petitioners also argue that the petition process was not conducted in accordance with Nevada law because some of those who circulated the petitions were not registered voters and some of the signatures on the petitions were obtained outside the presence of the circulators. Because no evidentiary hearing was conducted on the factual matters involved in this issue, we do not consider it.

the next election in the same form as it was first approved. This court is not justified in changing the ballot question when the voters have already approved it. If the court deems the question as passed defective, the separate question and new explanation must be placed on the ballot and passed in two consecutive elections.