OPINION
 

 By the Court,
 

 Gibbons, C. J.:
 

 In this original petition for a writ of mandamus, we examine a Nevada constitutional amendment that precludes State Assembly members from serving more than 12 years in office.
 
 [1]
 
 In examining that amendment, we first address two issues: whether a petition for a writ of mandamus is the appropriate means for challenging a State Assembly member’s qualifications to run for office and whether the constitutional amendment setting term limits for the State Assembly Office is valid and enforceable. With regard to the
 
 *602
 
 first issue, under the circumstances presented in this original proceeding involving a matter of statewide importance, a petition for mandamus relief is an appropriate way in which to challenge a candidate’s qualifications on term-limit grounds. As regards the second issue, we conclude that the Nevada Constitution’s term-limit amendment is valid and enforceable in light of our precedent approving the method in which the amendment was enacted.
 

 Because we conclude that a petition for mandamus relief is appropriate for our consideration and that the term-limit amendment is valid, we next address the substance of the petition: whether a member of the State Assembly seeking reelection should be disqualified as a candidate on the ground that, under the term-limit amendment, she will have exceeded the 12-year limit on serving in that office when her current term expires following the 2008 general election. As the constitution provides that a State Assembly member’s term of office begins on the day after the member’s election and the State Assembly member who petitioner asserts has exceeded the 12-year term limitation began serving in that office on November 6, 1996 — before the term-limit provision became effective on November 27, 1996 — her term that began in 1996 does not count toward the 12-year limitation period. Thus, as calculated from the amendment’s effective date, the candidate whose qualifications petitioner challenges on term-limit grounds will not have served in the State Assembly for 12 years or more by the time her current term expires. Accordingly, because she is eligible for reelection under the term-limit amendment, we deny this petition.
 

 PROCEDURAL HISTORY AND FACTS
 

 In the 1994 general election, Nevada voters approved proposed amendments to Nevada’s Constitution that would preclude a person from serving in the State Assembly and Senate and in offices in local governing bodies for more than 12 years. In the next general election, held on November 5, 1996, Nevada voters again approved the constitutional amendments. Thereafter, on November 27, 1996, following a canvass of the November 5 election results, the proposed amendments became effective as part of Nevada’s Constitution.
 
 [2]
 
 The particular amendment at issue in this proceeding was added to Nevada’s Constitution as Article 4, Section 3(2), providing that “[n]o person may be elected or appointed as a member of the Assembly who has served in that Office, or at the expiration of his current term if he is so serving will have served, 12 years or more, from any district of this State.”
 

 
 *603
 
 Real party in interest Barbara E. Buckley was reelected to the Nevada State Assembly, District 8 office on November 5, 1996, and, through subsequent reelections, she has continued to serve in that office to the present date. Thus, Buckley will complete her twelfth year of service in the Nevada State Assembly since November 1996 when her current term expires following the November 2008 general election. Currently, Buckley is seeking reelection for another term of office for the Nevada State Assembly, District 8, and has submitted to the Nevada Secretary of State her Declaration of Candidacy to be included on the 2008 primary and general election ballots.
 

 After Buckley declared her candidacy, on June 4, 2008, petitioner Kevin Child, a Nevada elector, submitted to the Clark County Registrar of Voters an NRS 293.182 written challenge to Buckley’s qualifications for office, in which he alleged that Buckley was not qualified to run for another term in the Nevada State Assembly based on Article 4, Section 3(2)’s 12-year service limitation. In response, the Registrar of Voters transmitted Child’s challenge to the Clark County District Attorney for a determination as to whether probable cause existed to support the challenge. The Clark County District Attorney subsequently issued a letter to Child, denying his challenge as untimely under NRS 293.182, since it had been submitted after this year’s June 2, 2008, deadline for such challenges.
 
 [3]
 
 This petition for mandamus relief followed.
 
 [4]
 

 In petitioning this court for extraordinary relief, Child challenges Buckley’s candidacy for the Nevada State Assembly, District 8, on the basis that she will have served in that office for 12 years at the time when her current term expires. He therefore maintains that, under the Nevada Constitution, Article 4, Section 3(2), she is not eligible for reelection. Child asks this court to issue a writ of mandamus compelling respondent Harvard Lomax, the Clark County Registrar of Voters, to exclude Buckley from the 2008 primary and general election ballots.
 
 [5]
 
 Buckley has filed an answer, as
 
 *604
 
 directed. Child was then permitted to file a reply. The Nevada Legislature, on a motion to intervene, and the United States Term Limits Foundation, on a motion for leave to file an amicus curiae brief, have each filed briefs in this matter as well.
 

 DISCUSSION
 

 As an initial matter, we will address Buckley’s argument that a petition for a writ of mandamus is not an appropriate means by which to challenge her candidacy. Next, we will address whether the Nevada Constitution was validly amended to include term limits for certain offices. Because we conclude that Buckley’s candidacy may be challenged through a writ petition and that the term-limit amendment in question is valid, and thus enforceable, the final issue we address is whether it applies to State Assembly offices that were filled by virtue of the November 1996 election.
 

 The propriety of writ relief
 

 Buckley asserts that Child had a plain, speedy, and adequate legal remedy, of which he failed to avail himself, and therefore we should decline to consider his writ petition, since writ relief generally is obtainable only when a petitioner lacks an adequate legal remedy. In particular, Buckley points out that, under NRS 293.182, an elector such as Child may file in the Registrar of Voter’s office a written challenge to a potential candidate’s qualifications not later than five days after the last day when the candidate may withdraw her candidacy.
 
 [6]
 
 Under that statute, if probable cause for the challenge is determined to exist, a district court hearing is held and if the district court finds that the candidate is not qualified, that candidate’s name is not allowed to appear on the ballot.
 
 [7]
 

 Buckley maintains that because Child failed to timely avail himself of the procedure and remedy set forth under NRS 293.182, he should not be allowed to challenge her candidacy through a petition for extraordinary relief in this court. Buckley also argues that Child still has an adequate legal remedy available because other statutory mechanisms allow an elector to challenge a winning candidate’s qualifications after the election.
 
 [8]
 

 A writ of mandamus may issue to compel the performance of an act that the law requires as a duty resulting from an office, trust,
 
 *605
 
 or station,
 
 [9]
 
 or to control a manifest abuse of discretion.
 
 [10]
 
 Mandamus is an extraordinary remedy, generally available only when a petitioner lacks a plain, speedy, and adequate alternative legal remedy.
 
 [11]
 
 Nevertheless, in those rare circumstances evoking urgency or evincing matters of statewide importance, this court, in recognizing situations creating a need for immediate intervention, has considered petitions for extraordinary relief, even though a remedy at law was otherwise available to petitioner.
 
 [12]
 
 Whether a petition for mandamus relief will be considered is within our sole discretion.
 
 [13]
 

 Here, Child attempted to challenge Buckley’s candidacy under NRS 293.182, but Child’s challenge was rejected as untimely. Nevertheless, Child maintained at oral argument before this court that any timely challenge would have been futile, given that other similar but timely challenges brought by the Secretary of State were declined for lack of probable cause, and NRS 293.182 does not provide a means for further pursuing a challenge if the district attorney declines it. Since the Secretary of State has petitioned this court for extraordinary relief in the other similar challenges to which Child refers, and we have had the opportunity to review and decide those matters, we agree that if Child had timely filed his challenge to Buckley’s candidacy, it likely would have been denied for lack of probable cause.
 
 [14]
 
 Thus, in this particular instance, NRS 293.182 would not have provided an adequate legal remedy. As for Buckley’s argument that a postelection challenge provides Child an adequate legal remedy precluding writ relief, we do not fully agree. While an elector may file a postelection challenge against an elected member of the State Assembly, the procedures for doing so and the remedies available if the challenge is successful differ from the preelection procedures set forth under NRS 293.182.
 
 [15]
 
 
 *606
 
 Due to the statewide significance of the question presented, a post-election challenge does not provide an adequate means to avoid impairing voter input.
 
 [16]
 
 Thus, we exercise our discretion to consider this petition.
 
 [17]
 

 Article 4, Section 3(2) ’s validity
 

 The Legislature, as intervenor, challenges Article 4, Section 3(2)’s constitutional validity and requests that we declare that amendment invalid and unenforceable. A similar amendment was challenged by the Legislature in
 
 Secretary of State
 
 v.
 
 Burk,
 

 [18]
 

 another writ proceeding before this court. Like Article 4, Section 3(2), that amendment was enacted by the same voter-approved initiative in 1996 and sets forth a 12-year term limit; it, however, applies to local and state offices other than members of the State Assembly or State Senate.
 
 [19]
 
 Article 4, Section 3(2), at issue here, and Article 15, Section 3(2), at issue in
 
 Burk,
 
 both resulted from the same 1996 ballot initiative. As in
 
 Burk,
 
 the Legislature’s challenge to the legislative term-limit amendment is grounded on what the Legislature perceives as problems with the ballot question underlying the term-limit amendments’ enactment.
 
 [20]
 
 Specifically, the Legislature asserts that the amendment was presented to voters on
 
 *607
 
 the 1996 ballot in a manner that differed from the way it originally was presented on the 1994 ballot.
 
 [21]
 
 The Legislature also argues that the ballot question’s language confused voters and that it violated NRS 295.009, which requires that “[ejach petition for initiative or referendum must . . . [e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto,” or a similar single-subject requirement.
 
 [22]
 

 In response, Child argues that the Legislature’s challenge to the amendments’ validity is barred by the doctrine of laches. Regardless, Child, pointing to
 
 Nevada Judges Ass’n v.
 
 Lau,
 
 [23]
 
 maintains that the term-limits question was presented on the 1996 ballot “in the same manner” as it was presented on the 1994 ballot. Child also contends that Article 4, Section 3(2)’s term-limit provision comported with single-subject requirements because it concerned only one subject: term limits. Buckley has waived any argument concerning the term-limit amendment’s constitutional validity.
 

 We resolved the Legislature’s arguments as to the term-limit provision’s validity in the
 
 Burk
 
 opinion, concluding that, under existing precedent in
 
 Lau
 
 and another decision, the ballot question comported with Article 19, Section 2(4)’s requirement that a proposed constitutional amendment approved by the voters must be published and resubmitted to the voters at the next succeeding general election in the “same manner” as the question originally was submitted.
 
 [24]
 
 In
 
 Burk,
 
 we explained that, under the rule of
 
 stare decisis,
 
 we adhere to our previous decisions, unless the party asking us to disavow precedent demonstrates that those earlier decisions were clearly erroneous, which, we concluded, the Legislature
 
 *608
 
 failed to do.
 
 [25]
 
 With regard to the Legislature’s contentions that the ballot question’s language confused voters and that it violated the single-subject rule, we determined in
 
 Burk
 
 that the laches doctrine operated to bar any such challenges.
 
 [26]
 
 In so doing, we explained that the Legislature’s challenges were ripe for judicial consideration at the preelection stage, before the ballot question was twice presented to the voters.
 
 [27]
 
 Since both amendments, Article 4, Section 3(2), at issue here, and Article 15, Section 3(2), which was addressed in
 
 Burk,
 
 resulted from the voters approving the same ballot question, the reasoning set forth in
 
 Burk
 
 applies with equal force here. Accordingly, we conclude that Article 4, Section 3(2), withstands the Legislature’s validity challenge.
 

 Article 4, Section 3(2) ’s application
 

 Since we have determined that a writ petition is an available means by which to challenge a State Assembly member’s candidacy on term-limit grounds, and as we have concluded that Nevada Constitution, Article 4, Section 3(2) is valid, we now turn to the merits of Child’s writ petition and address when a State Assembly member’s term of service begins.
 

 In
 
 Burk,
 
 we recognized that the term-limit amendments apply prospectively from their effective date, and no party here asserts otherwise.
 
 [28]
 
 Thus, determining when a State Assembly member’s term of service begins will resolve the issue concerning Buckley’s qualifications to seek reelection in the State Assembly, District 8 office, and in particular, whether the Article 4, Section 3(2) term-limit amendment operates to preclude Buckley’s name from appearing on the 2008 primary and general election ballot. According to Child, an Assembly member does not begin serving in office until the day after the supreme court canvasses the votes following the general election. Buckley, on the other hand, argues that the term of service begins on the day immediately following the general election.
 

 As noted, the Nevada constitutional amendment imposing term limits on members of the Nevada State Assembly is Article 4, Section 3(2): “[n]o person may be elected or appointed as a member of the Assembly who has served in that Office, or at the expiration of his current term if he is so serving will have served, 12 years or more, from any district of this State.” State Assembly terms of service are defined in Nevada Constitution Article 4, Section 3(1),
 
 *609
 
 which provides that an Assembly member’s “term of [o]ffice shall be two years from the day next after [the member’s] election.”
 

 Buckley, relying on Article 4, Section 3(l)’s “day next after [the member’s] election’ ’ language, argues that the term based on her 1996 vote into office commenced on the day after her November 5 election, on November 6. Thus, Buckley asserts, the term of service connected to her November 5, 1996, election does not count toward the limitation period because that term began on November 6 — before the term-limit amendment’s November 27 effective date.
 

 Child, on the other hand, argues that, similar to the term-limit amendment, which became effective after the votes were canvassed on November 27, 1996, Buckley was not officially “elected” until after the canvass of the November 5 election results. Thus, according to Child, under Article 4, Section 3(l)’s language providing that State Assembly members’ terms of office begin the “day next after their election,” Buckley’s term did not commence until November 28, the day after the votes were canvassed and after the term-limit amendment’s November 27 effective date.
 

 Child’s argument, however, runs contrary to the intent of the delegates who assembled for the purpose of framing the Nevada Constitution and establishing a form of state government. During Nevada’s Constitutional Convention, certain delegates argued that to commence a legislator’s term before votes had been canvassed seemed problematic.
 
 [29]
 
 In response, the president of the convention explained the importance of seating legislators “immediately after the day of election” in order to “prevent any abuse of power by the Executive of the State” in the event that a special session is called in the interim between the election and the canvass of votes.
 
 [30]
 

 The convention president explained that the constitution was purposefully written to provide that legislators take office immediately after the day of election; in the event that the Nevada Governor commenced a special session after the general election, it was important that only “those who . . . last received the [endorsement of their constituents . . . constitute the Legislature at such extra session, rather than those whose terms will have expired.”
 
 [31]
 
 He then pointed out that, even assuming that a special session was called an hour after the election, the old Legislature should go out and the newly elected members should be entitled to their seats.
 
 [32]
 
 As it was explained, those just elected must be ad
 
 *610
 
 mitted and the members immediately vested with the authority to judge the election and qualification of those claiming membership.
 
 [33]
 
 The convention’s president went on to state that the constitution does not require any production of paper evidence for a legislator to take office, explaining that “to make a man’s right to a seat depend upon a certificate of election would be giving to the Board of Canvassers, instead of the Legislature, the right of judging of the election and qualification of members.’ ’
 
 [34]
 

 Nothing in Article 4, Section 3(1) ties the start of a State Assembly member’s term of service to a canvass of the votes.
 
 [35]
 
 Indeed, the framers specifically contemplated and rejected linking the beginning of a legislator’s term to a canvass of the votes.
 
 [36]
 
 Although the Constitutional Convention delegates noted that the need to convene the Legislature between the day of election and the time when the votes are canvassed would be a rare occasion, they rejected any changes to the constitution’s language calling for legislators to take office the day after the election, based on the concern that, in the event a special session is called, the most recently elected legislators should attend, not those who were replaced.
 
 [37]
 

 As Buckley points out, the framers’ foresight in contemplating exigent circumstances necessitating a special legislative session between the election and a canvass of the votes became apparent in 2004, during the 21st Special Legislative Session, convened for the purpose of impeachment proceedings against then State Controller Kathy Augustine. That session was called on November 10, 2004, 8 days after the November 2 election, but 13 days before the votes were canvassed on November 23.
 
 [38]
 
 The newly elected legislators were sworn into office on November 10, 2004, by the then-Chief
 
 *611
 
 Justice of the Nevada Supreme Court and began actively serving in their legislative capacities on that date.
 
 [39]
 

 While legislators may not be called to actively serve in their positions before a canvass of the votes, they must be prepared to do so, as there is no set date on which they may be called into session. In adopting the constitution, the constitutional delegates specifically provided that legislators terms of service begin on the day after the election, and that provision’s substance has been retained ever since. Thus, as the constitution’s plain language provides, a State Assembly member-elect begins serving in office on the day after the election, and his or her predecessor is no longer a member of the Legislature after that date. Accordingly, Buckley’s term of office associated with her 1996 election commenced on November 6, 1996, before the term-limit amendment’s November 27, 1996, effective date. As a result, her term of office that began on November 6, 1996, cannot be included in calculating whether her service in office has exceeded the 12-year limitation period.
 

 CONCLUSION
 

 First, because an adequate legal remedy may not have been available to Child and this writ petition presents an issue of statewide importance in need of prompt clarification, we conclude that the petition is appropriate for our consideration. Next, as supported by our precedent addressing the ballot question underlying the term-limit amendment set forth in the Nevada Constitution Article 4, Section 3(2), we conclude that the Nevada voters validly adopted the amendment through the initiative process. Last, as set forth in the Nevada Constitution, Article 4, Section 3(1), and as purposefully contemplated by the framers of our constitution, State Assembly members’ terms of service begin on the “day next after their election.” Thus, because the term of service at issue here began on November 6, 1996, the day after Buckley’s November 5 election, and the term-limit, amendment that applies to State Assembly members did not become effective until November 27, 1996, Buckley’s service that began November 6, 1996, does not factor into the term limitation that now applies to her office.
 

 Accordingly, because Buckley will not have served in that office for 12 years or more from the date when the term-limit amendment
 
 *612
 
 became effective to the date when the next term commences, Child’s challenge to her qualifications to run for reelection fails. We therefore deny this petition for mandamus relief.
 

 Maupin, Hardesty, Parraguirre, Douglas, Cherry and Saitta, JJ., concur.
 

 [1]
 

 Nev. Const. art. 4, § 3(2).
 

 [2]
 

 See Torvinen
 
 v.
 
 Rollins,
 
 93 Nev. 92, 94, 560 P.2d 915, 917 (1977) (noting that a constitutional amendment adopted through the ballot-initiative process becomes effective on “the canvass of the votes by the supreme court”).
 

 [3]
 

 See
 
 NRS 293.182; NRS 293.202; NRS 293.177.
 

 [4]
 

 In addition to Child’s writ petition, two other writ petitions challenging candidacies on term-limit grounds were filed in this court and originally consolidated with the instant matter.
 
 See Secretary of State
 
 v. Burk, 124 Nev. 579, 188 P.3d 1112 (2008). We later entered an order, after considering oral arguments, deconsolidating this writ proceeding from the other two proceedings.
 

 [5]
 

 Alternatively, Child seeks a writ of mandamus directing respondent Ross Miller, in his capacity as Nevada Secretary of State, to include a challenge to Buckley’s candidacy in Miller’s challenges to certain other candidacies, which were filed in this court on the ground that those candidates were not qualified to seek reelection under the Nevada Constitution, Article 15, Section 3(2)’s term-limit provision. However, because Article 15, Section 3(2)’s term-limit provision does not apply to State Assembly members, we deny any request for relief under that provision.
 

 [6]
 

 NRS 293.182(1).
 

 [7]
 

 NRS 293.182(4) and (5).
 

 [8]
 

 See
 
 NRS 293.407; NRS 293.425; NRS 293.427.
 

 [9]
 

 NRS 34.160;
 
 see also Smith
 
 v.
 
 District Court,
 
 107 Nev. 674, 818 P.2d 849 (1991).
 

 [10]
 

 Round Hill Gen. Imp. Dist. v. Newman,
 
 97 Nev. 601, 637 P.2d 534 (1981).
 

 [11]
 

 See
 
 NRS 34.170.
 

 [12]
 

 Salaiscooper
 
 v.
 
 Dist. Ct.,
 
 117 Nev. 892, 901-02, 34 P.3d 509, 515-16 (2001).
 

 [13]
 

 See Smith,
 
 107 Nev. at 677, 818 P.2d at 851.
 

 [14]
 

 With regard to the candidacies that the Secretary of State challenged on term-limit grounds, the Clark County District Attorney in that matter found a lack of probable cause to warrant a district court hearing.
 
 See Secretary of State v. Burk,
 
 124 Nev. 579, 188 P.3d 1112 (2008). The Secretary of State then petitioned this court for extraordinary relief, which we granted.
 
 Id.
 

 [15]
 

 Compare
 
 NRS 293.182 (outlining procedures for challenging a candidate’s qualifications to run for office)
 
 with
 
 NRS 293.407 (setting forth the procedures for contesting a candidate’s election), NRS 293.425 (setting forth the
 
 *606
 
 procedures for contesting the general election for the office of assembly member or senator),
 
 and
 
 NRS 293.427 (describing how a general election contest for the office of assembly member or senator is decided);
 
 see also
 
 Nev. Const. art. 4, § 6 (providing that each house shall judge qualifications, elections, and returns of its own members);
 
 Laxalt v. Cannon,
 
 80 Nev. 588, 397 P.2d 466 (1964) (explaining that Nevada Constitution Article 4, Section 6 deprives state courts of jurisdiction to decide a contest for state legislative offices).
 

 [16]
 

 See Salaiscooper,
 
 117 Nev. at 901-02, 34 P.3d at 515-16;
 
 Walker
 
 v.
 
 Dist. Ct.,
 
 120 Nev. 815, 819, 101 P.3d 787, 790 (2004) (explaining that a petition for extraordinary relief is often considered when “ ‘an important issue of law needs clarification and public policy is served by this court’s invocation of its original jurisdiction’ ” (quoting
 
 Falcke v. Douglas County,
 
 116 Nev. 583, 586, 3 P.3d 661, 662-63 (2000))).
 

 [17]
 

 See Burk,
 
 124 Nev. 579, 188 P.3d 1112 (concluding that a petition for extraordinary relief is an appropriate means for challenging a candidacy on term-limit grounds).
 

 [18]
 

 See id.
 
 at 595-99, 188 P.3d at 1123-25.
 

 [19]
 

 See
 
 Nev. Const. art. 15, § 3(2).
 

 [20]
 

 At the time when the Legislature was allowed to intervene and file a brief on the validity of the term-limit amendments to the constitution, this matter was consolidated with
 
 Burk,
 
 124 Nev. at 583-84, 188 P.3d at 1115. Thus, the Legislature’s argument is aimed at both the term-limit amendment that applies to the candidates challenged in
 
 Burk,
 
 Article 15, Section 3(2), and the term-limit amendment that applies to the challenge to Buckley’s candidacy here, Article 4, Section 3(2). Both amendments resulted from the same ballot questions.
 

 [21]
 

 Under Nevada Constitution, Article 19, Section 2(4), if an initiative petition proposes an amendment to the constitution and the required number of signatures is obtained to place the question on the ballot and the majority of voters approve of the amendment, the Secretary of State must then publish and resubmit the question to the voters at the next succeeding general election “in the same manner” as the question was originally submitted.
 

 [22]
 

 Although NRS 295.009 was not enacted until 2005, the Legislature nevertheless maintains that a one-subject rule applied to the 1996 ballot question at issue here. In support of its argument that ballot initiatives were required to comply with a one-subject rule even before NRS 295.009’s enactment, the Legislature relies on Nevada Constitution, Article 4, Section 17, which provides that each law enacted by the Legislature must “embrace but one subject.”
 

 [23]
 

 112 Nev. 51, 910 P.2d 898 (1996).
 

 [24]
 

 Burk,
 
 124 Nev. at 596-97, 188 P.3d at 1123-24 (citing
 
 Nevada Judges Ass’n
 
 v.
 
 Lau,
 
 112 Nev. 51, 910 P.2d 898, which addressed the ballot questions at issue here and acknowledged that presenting the 1994 ballot question in the form of two questions in 1996 complied with Article 19, Section 2(4)’s requirement by recognizing that approval by a majority of voters in the general election will effectively amend the constitution);
 
 Rogers v. Heller,
 
 117 Nev. 169, 177 n.22, 18 P.3d 1034, 1039 n.22 (2001) (noting that initiatives must be kept intact so as not to obstruct the people’s voice and explaining that the question in
 
 Lau
 
 complied with that requirement).
 

 [25]
 

 Burk,
 
 124 Nev. at 597, 188 P.3d at 1124 (2008).
 

 [26]
 

 Id.
 
 at 599, 188 P.3d at 1125.
 

 [27]
 

 Id.
 
 at 598, 188 P.3d at 1125.
 

 [28]
 

 Id.
 
 at 593, 188 P.3d at 1122 (citing
 
 Torvinen v. Rollins,
 
 93 Nev. 92, 94, 560 P.2d 915, 917 (1977)).
 

 [29]
 

 See Debates & Proceedings of the Nevada State Constitutional Convention of 1864,
 
 at 140, 692-93 (Andrew J. Marsh off. rep., 1866).
 

 [30]
 

 Id.
 
 at 693.
 

 [31]
 

 Id.
 

 [32]
 

 Id.
 
 at 694.
 

 [33]
 

 Id.
 
 see
 
 Nev. Const., art. 4, § 6 (vesting each house of the Legislature with the power to judge the qualifications, election, and returns of its own members).
 

 [34]
 

 Debates & Proceedings of the Nevada State Constitutional Convention of 1864,
 
 at 694.
 

 [35]
 

 In contrast, Nevada Constitution Article 19, Section 2(4), provides that an initiative petition that amends the Nevada Constitution becomes effective upon completion of the canvass of votes by the supreme court.
 

 [36]
 

 See Debates & Proceedings of the Nevada State Constitutional Convention of 1864,
 
 at 692-95.
 

 [37]
 

 Id. at 695 (ratifying a section of the constitution pertaining to state senators, which contains language similar to Article 4, Section 3(1), with regard to terms of service beginning the day after the election).
 

 [38]
 

 Nev. Const. art. 4, § 3(1) (providing that Assembly members “shall be chosen biennially by the qualified electors of their respective districts, on the Thesday next after the first Monday in November”). In 2004, the Tuesday after the first Monday in November fell on November 2.
 
 See
 
 NRS 47.130 (allowing courts to take judicial notice of generally known facts); 21st Special Sess., Articles of Impeachment (Nev. 2004) (explaining the basis for impeaching Controller Augustine, including testimony and evidence presented to the Assembly on November 10 and 11, 2004, during the special session);
 
 *611
 
 NRS 293.395(2) (providing that the canvass of the votes takes place on the fourth Tuesday of November after each general election). In 2004, the fourth Tuesday after the general election fell on November 23.
 
 See
 
 NRS 47.130.
 

 [39]
 

 21st Special Sess., Journal of the Assembly, 1-2 (2004) (noting that the oaths of office were administered to the Assembly members-elect by Chief Justice Shearing at 11:20 a.m. on November 10, 2004); NRS 282.010(1) (noting that members of the Legislature, shall, before entering upon the duties of their respective offices, take and subscribe to the official oath of office).