BUILDING AND CONSTRUCTION TRADES COUNCIL OF NORTHERN NEVADA, AND DAN RUSNAK, APPELLANTS, v. STATE OF NEVADA, EX REL., PUBLIC WORKS BOARD, AND BOARD OF REGENTS OF THE UNIVERSITY OF NEVADA, RESPONDENTS.

No. 21951

August 20, 1992            836 P.2d 633

*Langton & Kilburn,* Reno, for Appellants.

*Frankie Sue Del Papa,* Attorney General, and *Jonathan Andrews,* Deputy Attorney General, Carson City, for Respondent State of Nevada, ex rel., Public Works Board.

*Donald F. Klasic,* General Counsel, University of Nevada System, Reno, for Respondent Board of Regents of the University of Nevada.

## OPINION

By the Court, MOWBRARY, C. J.:

Respondents solicited and received bids for a construction project at the University of Nevada, Reno campus. After determining that all of the bids exceeded the project budget, respondents notified all bidders that their bids had been rejected and that the project would be redesigned and re-bid. Instead of re-bidding the project, however, respondents negotiated and executed a contract with the construction company that had submitted the lowest bid during the initial bidding. Approximately one month after construction of the project began, appellants petitioned for a writ of mandamus, arguing that respondents had a legal duty to re-bid the project. After a hearing on the return date of the writ, the district court denied appellants' petition.

On appeal, appellants challenge the district court's denial of their petition. While we agree with appellants that respondents were required by law to re-bid the project, we also agree with the district court that the doctrine of laches barred issuance of the writ.

## THE FACTS

In July and August of 1990, respondent Public Works Board, acting on behalf of respondent Board of Regents, publicly invited construction contractors to bid on a project to restore the Mackay School of Mines Building on the University of Nevada, Reno campus ("the project"). The budget for the project was $6,113,275.00.

Approximately $5,000,000.00 of the proposed construction budget consisted of a federal grant from the Defense Logistics Agency of the Department of Defense. Private sources donated

the remainder of the funds. No state funds were appropriated for the project.

Respondents received numerous bids for the project. Of these bids, Weyher Brothers Company ("Weyher") submitted the lowest, at $6,645,000.00. By letter dated September 25, 1990, however, respondents notified all bidders that "[a]ll of the responsive bids received were significantly over the available construction budget," and that as a result, "this project will be redesigned with a reduced scope of work and re-bid, as soon as possible."

Despite the letter of September 25, 1990, respondents immediately entered into negotiations with Weyher. Respondents undertook these negotiations because Weyher was the lowest responsible bidder and because Weyher's original bid for the project was within ten percent of the budget for the project. *See* NRS 341.145(3)(b). Respondents did not negotiate with any of the other bidders.

As a result of the negotiations, on October 15, 1990, respondents received a revised bid from Weyher. The next day, representatives of respondents met with federal government officials to discuss the project. During this meeting, the federal officials expressed concern that the $5,000,000.00 federal grant might be lost if it was not utilized soon.[1] Based upon their concern that the federal funds would be lost if the project were delayed, respondents decided to accept Weyher's revised bid and not re-bid the project.

In early January 1991, appellant Building Trades Council of Northern Nevada ("the Council") learned that negotiations between respondents and Weyher had taken place and that respondents intended to award the project contract to Weyher. On January 8, 1991, a representative of the Council telephoned respondents and protested that the project contract had been awarded to Weyher without first re-bidding.

On January 14, 1991, respondents formally executed a project contract with Weyher and notified the other original bidders of the decision to award the project contract to Weyher. On January 15, 1991, Weyher began work on the project. On that same date, the Council learned that Weyher had begun working on the project.

On February 11, 1991, the Council filed a petition for a writ of

---

[1]According to the officials, the following factors jeopardized the grant: (a) Graham Rudman Reductions imposed on the federal budget; (b) the possibility that the Department of Defense would recall the grant because the grant was part of the 1987 appropriation and had not yet been spent; and (c) the costs associated with the activities of the United States Armed Forces in Operation Desert Shield.

mandamus seeking to force respondents to re-bid the project. After a hearing, the district court entered findings of fact, conclusions of law and a decision denying the petition. The district court concluded that (1) respondents had discretion to negotiate a contract with Weyher instead of re-bidding the project, and (2) even if respondents did not have such discretion, the doctrine of laches barred issuance of the writ. This appeal followed.

## DISCUSSION

### I. *Mandamus.*

Appellants contend that respondents had a legal duty to re-bid the project and, therefore, the district court erred in denying appellants' petition for a writ of mandamus.

A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station. NRS 34.160. Mandamus, however, will not lie to compel an officer or board to perform a discretionary act. Young v. Board of County Comm'rs, 91 Nev. 52, 530 P.2d 1203 (1975). Nor will mandamus lie to control discretionary action, Gragson v. Toco, 90 Nev. 131, 520 P.2d 616 (1974), unless discretion is manifestly abused or is exercised arbitrarily or capriciously. Henderson v. Henderson Auto, 77 Nev. 118, 359 P.2d 743 (1961).

Here, because of the $5,000,000.00 federal grant, the project was a "public work" as defined by NRS 338.010(3)(b). NRS 338.143 and NRS 341.145 specify the procedures that must be followed in bidding a public work. NRS 341.145, the critical section for this appeal, states in relevant part:

The [public works] board:

. . . .
2. Shall solicit bids for and let all contracts for new construction or major repairs.
3. May negotiate with the lowest responsible bidder on any contract to obtain a revised bid if:
(a) The bid is less than the appropriation made by the legislature for that building project; and
(b) The bid does not exceed the relevant budget item for that building project as established by the board by more than 10 percent.
4. May reject any or all bids.
. . . .

Appellants argue that although respondents had discretion to

determine whether or not to undertake the project in the first place, once respondents exercised their discretion by undertaking the project, they became bound by NRS 341.145. Specifically, appellants contend that mandamus is warranted because respondents, after notifying all bidders that all the bids were rejected and that the project would be redesigned and re-bid, did not have discretion to negotiate the project contract with Weyher. We agree.

When a statute is susceptible to but one natural or honest construction, that alone is the construction that can be given. *Randono v. CUNA Mutual Ins. Group*, 106 Nev. 371, 793 P.2d 1324 (1990). When construing a specific portion of a statute, the statute should be read as a whole, and, where possible, the statute should be read to give meaning to all of its parts. *Sheriff v. Morris*, 99 Nev. 109, 659 P.2d 852 (1983). Applying these principles here, we construe NRS 341.145(2)-(4) thus: After soliciting bids on a public works project, the Public Works Board may, pursuant to NRS 341.145(3), negotiate with the lowest responsible bidder (provided the criteria embodied in sections (a) and (b) are satisfied) *or* reject any or all bids and re-bid or cancel the project.[2] If the Public Works Board chooses to negotiate with the lowest responsible bidder, it must first notify all other bidders that their bids have been rejected, that the project will not be re-bid, and that the Public Works Board intends to negotiate with the lowest responsible bidder. The Public Works Board may not, however, as it did here, notify all bidders that their bids have been rejected and that the project will be redesigned and re-bid, and then enter into negotiations with the lowest responsible bidder.

For the foregoing reasons, we hold that respondents had a legal duty under NRS 341.145 to re-bid the project.

## II. *Laches.*

Although we hold that respondents had a legal duty to re-bid the project, it remains for us to consider whether, as the district court concluded, the Council's petition was barred by the doctrine of laches.

Laches is an equitable doctrine which may be invoked when delay by one party works to the disadvantage of the other, causing

---

[2]Because no appropriation by the legislature is involved, and because Weyher's original bid did not exceed the budget for the project by more than ten percent, neither § (a) nor § (b) barred respondents from negotiating with Weyher.

a change of circumstances which would make the grant of relief to the delaying party inequitable. Erickson v. One Thirty-Three, Inc., 104 Nev. 755, 766 P.2d 898 (1988). Especially strong circumstances must exist, however, to sustain a defense of laches when the statute of limitations has not run. Lanigir v. Arden, 82 Nev. 28, 409 P.2d 891 (1966). As an extraordinary remedy, a writ of mandamus is subject to the doctrine of laches. Buckholt v. District Court, 94 Nev. 631, 584 P.2d 672 (1978). In deciding whether the doctrine should be applied to preclude consideration of a petition for a writ of mandamus, a court must determine: (1) whether there was an inexcusable delay in seeking the petition, (2) whether an implied waiver arose from the petitioner's knowing acquiescence in existing conditions, and (3) whether there were circumstances causing prejudice to the respondent. *Id.* at 633, 584 P.2d at 673-674.

Applying the test set forth in *Buckholt,* we hold that the district court properly found that the relief sought by Council's petition was precluded by the doctrine of laches. First, we believe the Council inexcusably delayed seeking the petition. The evidence reveals that the Council knew by January 8, 1991, that the project contract was going to be awarded to Weyher without being re-bid. The evidence also demonstrates that on or about January 15, 1991, the Council knew that Weyher had begun work on the project. Nevertheless, the Council failed to take immediate legal action to stop the work being done on the project pending resolution of this dispute. As the district court observed, the Council could have secured a temporary restraining order or preliminary injunction, but instead waited until February 11, 1991 (approximately one month later), to file a petition for writ of mandamus. The Council offers no convincing reason for this delay.

Second, we conclude that an implied waiver arose from the Council's knowing acquiescence in existing conditions. As previously noted, the Council knew by January 15, 1991, that Weyher had received the project contract and had commenced working. Though the Council protested to respondents on January 8, 1991, the Council failed to take any additional action until February 11, 1991. And this failure to take action cannot be ascribed to a lack of knowledge, for at the March 1, 1991, hearing before the district court, the Council's attorney stated:

> But the latches [sic] argument I don't think is a very valid argument because we acted with celerity I believe. *We had our option of running to the [c]ourt for an injunction but prudence mandated we not do that at that point in time.* We instead tried to put the various entities on notice, specifically the [Board] that we thought there was a reason for not letting this contract. . . .

Thus, the Council knew of its legal rights but chose not to exercise them until February 11, 1991.

Finally, in our view, the Council's delay substantially prejudiced respondents. The record demonstrates that Weyher performed significant work on the project between January 15, 1991 (the date on which the Council learned that Weyher had begun work on the project), and March 1, 1991 (the date on which the hearing on the petition for writ of mandamus took place). Specifically, Weyher had gutted the inside of the building, rebuilt some parts of the building, cut and removed a major retaining wall to make way for a loading ramp, removed and stored brick work, relocated major utility lines and started removing asbestos from the building. In addition, the record shows that if the district court had rescinded the project contract and required re-bidding, the consequent delay would have increased the project's cost and perhaps resulted in a withdrawal of the federal grant.

Accordingly, we hold that, under the peculiar circumstances of this case, the district court properly found that the doctrine of laches barred the Council's petition for a writ of mandamus.

## CONCLUSION

We hold that respondents, once they notified all bidders that the bids had been rejected, and that the project would be redesigned and re-bid, were required by NRS 341.145 to re-bid the project. We also hold, however, that the district court correctly concluded that the doctrine of laches barred the Council's petition for a writ of mandamus. Accordingly, we affirm the order of the district court.

STEFFEN and YOUNG, JJ., concur.

ROSE, J., with whom SPRINGER, J., joins, concurring in part and dissenting in part:

I concur with the majority in its holding that the Public Works Board had a legal duty under NRS 341.145 to re-bid the project, but I do not agree that the Council's petition was barred by the doctrine of laches.

The respondents were required to re-bid the job and inform all bidders that the project would be redesigned. Rather than do this, they privately negotiated with Weyher Brothers Company (Weyher), executed a contract on January 14, 1991, with Weyher, and then notified the other bidders that Weyher had been awarded the construction project. The Council protested the respondents' actions by telephone calls and letters. Because these protests were unsuccessful, a petition for a writ of mandamus was filed on February 11, 1991, seeking to force respondents to re-bid the project.

Strong circumstances must exist to sustain a defense of laches when the statute of limitations has not run, Lanigir v. Arden, 82 Nev. 28, 409 P.2d 891 (1966); and I do not find compelling facts to deny the Council its requested relief. The Council acted in approximately three weeks after receiving formal notification. This is not an unreasonable period of time, especially when we consider that the Council initially tried to get relief without court action.

Laches is an equitable doctrine, and a party who requests equity must do equity. Overhead Door Co. v. Overhead Door Corp., 103 Nev. 126, 127, 734 P.2d 1233, 1235 (1987). The respondents violated the law by not re-bidding the project. They then surreptitiously began negotiating with one bidder, but informed the others that the project would be re-bid. When the project contract was formally signed, Weyher was ready immediately to begin work. The situation where time was very critical was created by respondents. By their conduct, the respondents have shown that they are not entitled to equitable relief.

For the reasons stated, I would not have found that the Council's petition was barred by laches. Because the building project has now been completed, giving the Council relief at this time is problematic; however, in light of the majority's adjudication that the Public Works Board acted improperly in failing to abide by NRS 341.145, I would remand to the trial court to give the appellants the opportunity to assert any legal claims that they might have against the Board or the University of Nevada, as they were entitled to relief when this matter was heard by the district court.