CARSON CITY, A CONSOLIDATED MUNICIPALITY AND A POLITICAL SUBDIVISION OF THE STATE OF NEVADA; AND CITIZENS FOR AFFORDABLE HOMES, APPELLANTS, v. GREGORY PRICE AND CHERYL PRICE, HUSBAND AND WIFE; AND MIKE WATERS AND JULIE WATERS, HUSBAND AND WIFE, RESPONDENTS.

No. 27425

March 27, 1997                                934 P.2d 1042

*Noel S. Waters*, District Attorney, *Paul A. Lipparelli*, Deputy District Attorney; *Allison, MacKenzie, Hartman, Soumbeniotis & Russell*, Carson City, for Appellants.

*Arthur J. Bayer*, Carson City, for Respondents.

## OPINION

By the Court, SHEARING, C. J.:

In 1992, Stanton Park Development, Inc. ("Stanton Park") developed the Mountain Park subdivision in Carson City. As a condition of approval of the subdivision, the Board of Supervisors of appellant Carson City ("Carson City") required construction of a storm drainage detention facility. Rather than build and maintain such a facility itself, Stanton Park dedicated the "easterly sixty feet of [subdivision] lots 96 and 127" (the "detention pond") to the city of Carson City to satisfy the condition. Carson City accepted and recorded the dedication in December 1993.

In June 1994, appellant Citizens for Affordable Homes, Inc. ("CAHI") proposed to Carson City that the detention pond property be conveyed to CAHI for use in its affordable housing program. In exchange, CAHI agreed to reengineer and reconstruct certain drainage structures within the subdivision. A draft agreement for the project was formulated and a public hearing scheduled. On August 5, 1994, written notices of the date, time, and subject of the hearing were mailed to all lot owners whose property lay within three hundred feet of the detention pond. A few days later, Cheryl Blomstrom ("Blomstrom"), CAHI's executive director, apparently sent out a separate, more detailed notice concerning the proposal to the same group of property owners.

At the August 18, 1994 public hearing, the Carson City Board of Supervisors heard from city officials, CAHI representatives, and proponents and opponents of the proposal. The board voted unanimously to approve the project. It appears that respondents Gregory and Cheryl Price ("the Prices") and respondents Mike and Julie Waters ("the Waters") (collectively "respondents"), all of whom owned property abutting the detention pond, did not attend the meeting. However, in early September 1994, the Prices

informed Blomstrom and Carson City Mayor Marv Teixeira of their opposition to the project.

On November 21, 1994, after CAHI had satisfied all material portions of the agreement for reengineering and reconstruction of the subdivision storm drainage system, Mayor Teixeira executed a quitclaim deed conveying title of the detention pond property to CAHI. On November 30, 1994, CAHI recorded the deed. On February 17, 1995, the Carson City Public Works Department issued building permits for construction of single family homes on the detention pond property. Millard Construction, the same builder that had erected the other Mountain Park subdivision homes, began construction shortly thereafter. Millard employed the same building plans and specifications as were utilized to build the other subdivision homes.

On April 11, 1995, respondents filed a complaint against CAHI and Carson City (collectively "appellants") claiming inverse condemnation, breach of the subdivision's CC&Rs, breach of respondents' contractual rights as third-party beneficiaries of the Carson City-Stanton Park contract, estoppel by appellants' failure to observe the dedicated-use drainage easement of the detention pond property, and property damage. Respondents sought injunctive relief and monetary damages.

On May 2, 1995, the district court granted respondents' application for a temporary restraining order prohibiting any further construction of the CAHI homes pending a full hearing on the matter. By that time, the two CAHI homes were approximately 75% complete.

On May 26, 1995, the district court issued an order granting a preliminary injunction restraining CAHI from continuing construction. The district court found, *inter alia,* that the conveyance of the property from Carson City to CAHI, as well as construction of the CAHI homes on the site, violated the subdivision's CC&Rs and provisions of NRS Chapter 278.

Appellants contend that the equitable doctrine of laches precludes issuance of the preliminary injunction because respondents waited more than eight months after receiving notice of the project before filing their complaint. Respondents contend that appellants' actual notice of respondents' opposition to the project as of September 1994, well before the filing of the complaint, precludes application of the doctrine of laches.[1]

---

[1]In their answering brief, respondents contend that this appeal should be dismissed because appellants filed their opening brief one day late. *See* N.R.A.P. 31(c). We deny respondents' "motion" and elect to hear this appeal because respondents have not alleged or shown that they suffered any prejudice as a result of this delay.

"Laches is an equitable doctrine which may be invoked when delay by one party works to the disadvantage of the other, causing a change of circumstances which would make the grant of relief to the delaying party inequitable." Building & Constr. Trades v. Public Works, 108 Nev. 605, 610-11, 836 P.2d 633, 636-37 (1992). Thus, laches is more than a mere delay in seeking to enforce one's rights; it is a delay that works to the disadvantage of another. Home Savings v. Bigelow, 105 Nev. 494, 496, 779 P.2d 85, 86 (1989). "The condition of the party asserting laches must become so changed that the party cannot be restored to its former state." *Id.*, 779 P.2d at 86. Applicability of the laches doctrine depends upon the particular facts of each case. *Id.*

The record shows that the Carson City Board of Supervisors held a public hearing about the proposed CAHI project in August 1994. Prior to the hearing, Carson City and CAHI mailed notices concerning the subject and date of the hearing to residences neighboring the detention pond property. Apparently, respondents did not attend the meeting. In early September 1994, respondent Gregory Price left a telephone message with Blomstrom and sent a letter to Mayor Teixeira voicing his objection to the project. On November 21, 1994, Carson City conveyed the detention pond property to CAHI. Thereafter, CAHI endeavored to obtain construction and other approvals to begin work on the houses. On December 7, 1994, Blomstrom sent a notice to the Waters notifying them that construction of the CAHI homes would begin in short order. Construction began in late February 1995. On February 1, 1995, the Prices' attorney notified Stanton Park representatives that the Prices intended to file suit to enjoin construction. Respondents' complaint was filed on April 11, 1995.

Despite respondents' early opposition to the project, we conclude that their claim for injunctive relief is barred under the doctrine of laches. Respondents did not threaten to institute legal proceedings against Carson City and CAHI until more than six months after the public hearing, and did not actually file their complaint for two more months. Thus, unlike the property owners in Dickstein v. Williams, 93 Nev. 605, 571 P.2d 1169 (1977), and Gladstone v. Gregory, 95 Nev. 474, 596 P.2d 491 (1979), respondents did not promptly pursue legal action. *See Building & Constr. Trades,* 108 Nev. at 610-12, 836 P.2d at 636-37 (writ of mandamus barred by laches where party seeking injunction delayed one month before instituting legal proceedings). During respondents' period of inaction, CAHI spent thousands of dollars preparing the lots, gaining government approvals, and actually completing a large portion of the construction. Respondents'

delay caused a material disadvantage to CAHI so altering CAHI's position that it cannot be restored to its pre-project condition. Accordingly, we conclude that the district court abused its discretion by issuing the preliminary injunction.

However, respondents are not foreclosed from pursuing their claims for monetary damages.

We reverse the order of the district court and remand this case for further proceedings.

ROSE and YOUNG, JJ., concur.[2]

SPRINGER, J., dissenting:

The district court saw a need to preserve the status quo during the pendency of this litigation. The trial judge made detailed findings of fact before issuing the preliminary injunction, all of which appear to support the trial judge's conclusion that "this is a proper instance for the issuance of a Preliminary Injunction, in that irreparable loss or damage will result to the Plaintiffs unless Defendants are prohibited from continuing with the construction of the two residences in question." I see no cause for this court's interfering with the district court's judgment in this regard.

The majority appears to base its dissolution of the preliminary injunction on its own factual determination that respondents "caused a material disadvantage to CAHI." I do not believe that this court is presently in a position, while the litigation is still pending before the trial court, to make an appellate judgment on the degree to which CAHI might have been disadvantaged. The question of whether CAHI has suffered such a "material disadvantage" as to warrant denial of preliminary injunctive relief is a factual question that is fairly answerable only at the conclusion of the evidence in the district court case. I would leave the district court alone and permit this matter to go its course at the trial level before we stick our appellate noses into the case. I dissent.

---

[2]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this appeal.